619 A.2d 343

**Kelce MOSLEY, James M. Rizor, Lloyd A. Rohanna, Stephen C. Love and Robert Elliott, Individuals, Appellants,**

v.

**OBSERVER PUBLISHING COMPANY, A Corporation, and David F. Pollock, Appellees.**

Superior Court of Pennsylvania.

Argued June 4, 1992.

Filed Jan. 19, 1993.

256

Joseph J. Hinchliffe, Philadelphia, for appellants.

David F. Pollock, Dist. Atty., Waynesburg, appellee, in pro per.

Before McEWEN, TAMILIA and BROSKY, JJ.

McEWEN, Judge.

This appeal has been taken from an order which (1) granted the preliminary objections [1] in the nature of a demurrer filed by David F. Pollock, the Greene County District Attorney (hereinafter appellee), and (2) dismissed appellee as a defendant in the defamation action instituted by Kelce Mosley, James M. Rizor, Lloyd A. Rohanna, Stephen C. Love and Robert Elliot (hereinafter appellants) against appellee and Observer Publishing Company, publisher of the *Observer–Reporter*, a daily newspaper circulated in Greene and Washington Counties. We affirm.

Appellants have in their brief set forth the factual history underlying this appeal:

> Plaintiff–Appellants Mosley, et al, hold or held the offices of the county commissioners, county treasurer and county

---

1. Pa.R.Civ.P. 1030 requires that all affirmative defenses, including the affirmative defense imposed by appellee to the instant complaint, namely, immunity from suit, be pleaded in a responsive pleading as "New Matter". Appellee, however, undertook to present the defense in preliminary objections in the nature of a demurrer, despite the quite clear restrictions of Pa.R.Civ.P. 1028 and requirement of 1030. Appellants failed to object to the form of pleading and have, therefore, waived the right to raise the procedural defect that would require appellee to proceed by answer with new matter. *Rufo v. Bastian–Blessing Co.*, 417 Pa. 107, 207 A.2d 823 (1965); *Bloom v. DuBois Regional Medical Center*, 409 Pa.Super. 83, 597 A.2d 671 (1991).

administrator of Greene County. Defendant-appellee Pollock is the district attorney of Greene County. The Observer Publishing Company is owner of the *Observer–Reporter*, a newspaper, and it is a defendant in this action. However, the publishing company is not a party to this appeal.

The communications giving rise to this case are epitomized by the relevant headlines in the *Observer–Reporter* reading: "F.B.I., D.A. Probe Allegations of Investment Kick Back," "County is Being Investigated for Treasury Bond Transactions," and "Controller: Commissioners Traded Bonds After Warning."

On June 1, 1990, the *Observer–Reporter* published an article by Bob Neibala headlined, "F.B.I./DA Probe Allegations of Investment Kickbacks." The article states, *inter alia,* that the Federal Bureau of Investigation and the District Attorney were working together to investigate allegations that "Greene County officials" received kickbacks from promoters of investments made with Greene County funds. The article indicates that the sources for the article were (1) an interview of defendant Pollock, (2) a search warrant sought by and predicated on information provided by defendant Pollock, and (3) an audit of county funds prepared by M.J. Milinovich, C.P.A. If the conduct of plaintiffs had been as described in the articles, plaintiffs would be subject to criminal prosecution for personally profiting or benefiting from the illegal investment of public funds.

The standard of review which we apply to a challenge to an order which sustains preliminary objections in the nature of a demurrer was set forth by our Supreme Court in *Allegheny County v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985):

A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976). For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts, *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970).

Since the sustaining of a demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *Botwinick v. Credit Exchange, Inc.*, 419 Pa. 65, 213 A.2d 349 (1965). If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. *Packler v. State Employment Retirement Board*, 470 Pa. 368, 371, 368 A.2d 673, 675 (1977); *see also Schott v. Westinghouse Electric Corp.*, *supra* [436 Pa.] at 291, 259 A.2d at 449.

Appellants rely for the claim against the district attorney upon the search warrant[2] and upon the statement of appellee recounted in the *Observer–Reporter* as follows:

Our office did some legwork for the Federal Bureau of Investigation for obtaining important records in order to determine if certain investment activities are above board. We're acting with the FBI, but it's really too soon for our office to comment.

Appellee urges this Court to affirm the order of the trial court because he is immune by reason of well established absolute privileges, specifically, the absolute privilege accorded to communications in a judicial proceeding and the absolute privilege accorded to high public officials.

The absolute privilege accorded judicial communications was quite succinctly described by our Supreme Court in *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 275 A.2d 53 (1971), when it stated:

All communications pertinent to any stage of judicial proceedings are accorded an absolute privilege which cannot be destroyed by abuse.... (citations omitted).

Thus statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they

2. The search warrant is reproduced and attached hereto as Exhibit "A".

occur in the pleadings or in open court. *Id.* at 323, 275 A.2d at 56, *cited in Passon v. Spritzer*, 277 Pa.Super. 498, 502, 419 A.2d 1258, 1261 (1980).

■ Appellants do not dispute that the search warrant was a judicial communication, but contend that the application for warrant was replete with "false" statements. However, the Supreme Court in its pronouncement made clear and certain that once absolute privilege attaches, it may be neither lost nor destroyed. Thus, the application for search warrant is not a communication for which a cause of action will lie.

Similarly, the privilege accorded governmental officials [3] cloaks appellee with immunity from claims of appellants based upon his statement as District Attorney and as recited in the

3. The United States Supreme Court, in *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), as it balanced the competing notions attendant the issue of official immunity, echoed with admiration the rationale of Judge Learned Hand for the principle of official immunity:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is

June 1, 1990, edition of the *Observer–Reporter*.[4] Since the late and venerable Judge Theodore O. Spaulding so aptly addressed this question for this Court in *McCormick v. Specter*, 220 Pa.Super. 19, 275 A.2d 688 (1971), we need but resound his perceptive decision:

> Two important contending interests are pertinent: the right of the individual to be secure in his reputation and the need

4. necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him." *Gregoire v. Biddle*, 2 Cir., 177 F.2d 579, 581. *Barr v. Matteo, supra*, 360 U.S. at 571–72, 79 S.Ct. at 1339–40.

The Supreme Court then intoned:

We are told that we should forbear from sanctioning any such rule of absolute privilege lest it open the door to wholesale oppression and abuses on the part of unscrupulous government officials. It is perhaps enough to say that fears of this sort have not been realized within the wide area of government where a judicially formulated absolute privilege of broad scope has long existed. It seems to us wholly chimerical to suggest that what hangs in the balance here is the maintenance of high standards of conduct among those in the public service. To be sure, as with any rule of law which attempts to reconcile fundamentally antagonistic social policies, there may be occasional instances of actual injustice which will go unredressed, but we think that price a necessary one to pay for the greater good. And there are of course other sanctions than civil tort suits available to deter the executive official who may be prone to exercise his functions in an unworthy and irresponsible manner. We think that we should not be deterred from establishing the rule which we announce today by any such remote forebodings.

*Barr v. Matteo, supra*, 360 U.S. at 576, 79 S.Ct. at 1342.

4. The author of this Opinion is a former District Attorney whose memory and musing inspires this commentary:

It has been said that the perils of public office are many and even seem to engage in unflagging pursuit of the office holder. No single peril, of course, endangers the public, political, and personal life of the office holder as does the press. It is thus ironic that, while the press is in constant pursuit of the official, some officials pursue the press. Few pursuits are so deadly for, as one commentator observed: Meeting the press is like having lunch with a cobra, you become the main course. The prerogatives of the office of prosecutor confer enormous power upon that officer. Similarly, the rights bestowed by the constitutional fathers confer awesome power upon the press. Thus, as that commentator further observed: Even a monk would be slow to bless the union of such repositories of power, so unholy can be their alliance.

of society for the free performance and full disclosure of its governmental business. In *Matson* [*v. Margiotti* ] *supra,* the Supreme Court stated: "Absolute privilege, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements on actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority or as it [is] sometimes expressed, within his jurisdiction."* [Citations omitted.] (Emphasis in original.) 371 Pa. [188] at 193–194, 88 A.2d [892] at 895 [ (1952) ].

Our Supreme Court has never enunciated any test or standard to determine when a "high public official" is acting within the scope of his "official duties". Here, we find that appellee's press conference was a proper undertaking of that office on the basis that the responsible performance of the District Attorney's office warrants his informing the public of matters pending in that office. However, it must be emphasized that it is the public interest—not that of the official involved—which provides the rationale for the immunity. Thus, given the great potential for harm, the privilege must be limited to those statements and actions which are in fact "closely related" to the performance of those official duties. Although the difficulties in application are readily apparent, such a test at least provides some guidance for the trial court's determination of when a "high public official's" statements or actions fall within the scope of absolute privilege.

Applying the above "test" to the press conference at issue, it is clear that summary judgment was properly granted. Here, the District Attorney was involved in an ongoing investigation of appellants' business dealings with the City of Philadelphia. Although some of his comments may have been excessive, they were nonetheless "closely related" to a matter pending in his office and thus within the scope of the privilege.

Thus it is that we affirm the decision of the distinguished Judge George P. Kiester to dismiss the cause of action of appellants as to the district attorney.

Order affirmed.