677 A.2d 1194

**Stanley B. LINDNER,**

v.

**James F. MOLLAN, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1996.

Decided June 18, 1996.

Jon J. Auritt, Media, for S. B. Lindner.

William F. Holsten, II, Andrew J. Bellwoar, Media, for J.F. Mollan.

Michael I. Levin, Willow Grove, for amicus curiae Pa. School Boards Assoc.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

NIGRO, Justice.

In this slander and libel action, Appellant Stanley B. Lindner appeals from the Order of the Commonwealth Court affirming the order of the Court of Common Pleas of Delaware County granting Appellee James F. Mollan's motion for summary judgment and dismissing Lindner's complaint with prejudice. We affirm.

The facts of this case are undisputed. At all times relevant, Appellant Lindner was Vice–President of the Yeadon Borough Council and Chairman of the Yeadon Borough Council's Finance Committee. Appellee Mollan was the Mayor of the Borough of Yeadon.

On March 5, 1992, the Borough Council held a regularly scheduled meeting in the Borough of Yeadon. Mayor Mollan attended the meeting. The Borough's budget deficit and financial affairs were under discussion when Mayor Mollan stated to Councilman Lindner, "And I'll say it right to your face; you're the village idiot.... You've been dipping into the till. I know for a fact. And you know I know." R.R. at 68a–69a. A local cable television station was videotaping the meeting for later broadcasting, and members of the print media and the general public were also in attendance.

Appellant filed a two-count civil action against Appellee alleging slander and libel. Appellee filed preliminary objections, which were dismissed. After discovery was completed, Appellee filed a motion for summary judgment. The Court of

Common Pleas of Delaware County granted Appellee's motion on the ground that he was immune to this civil suit under the doctrine of absolute privilege afforded high public officials.

The Commonwealth Court affirmed the trial court's order granting Appellee's motion for summary judgment. The Commonwealth Court held that Appellee was a high public official eligible for absolute immunity from civil suit. The Commonwealth Court also found that since Appellee's remarks were made within the course of his duties and the scope of his authority as Mayor, the doctrine of absolute privilege for high public officials applied.

The two issues which we now address on appeal are (1) whether the doctrine of absolute privilege afforded high public officials remains the law in Pennsylvania and (2) whether Appellee's remarks were made within the course and scope of his authority as Mayor such that the doctrine of absolute privilege for high public officials applies in this case. We agree with the Commonwealth Court that Appellee is immune from this civil suit under the doctrine of absolute privilege afforded high public officials.

 More than forty years ago in *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952), this Court explained that the doctrine of absolute privilege for high public officials,

as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Matson,* 371 Pa. at 194, 88 A.2d at 895. The doctrine of absolute privilege "rests upon the * * * idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Montgomery v. City of Philadelphia,* 392 Pa. 178, 181,

140 A.2d 100, 102 (1958). This sweeping immunity is "not for the benefit of high public officials, but for the benefit of the public." *Barto v. Felix,* 250 Pa.Super. 262, 272, 378 A.2d 927, 932 (1977) (Spaeth, J., dissenting), *appeal denied,* 487 Pa. 455, 409 A.2d 857 (1980). Absolute privilege is

> designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.

*Montgomery,* 392 Pa. at 183, 140 A.2d at 103.

As such, absolute immunity for high public officials from civil liability is the only legitimate "means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Id.* Even though the innocent may sometimes suffer irreparable harm,

> it has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or libel * * * suits where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties.

*Matson,* 371 Pa. at 203, 88 A.2d at 899–900.

Appellant contends that Section 8550 of the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") expressly abrogates Appellee's immunity to civil suits arising out of false defamatory statements. Appellant argues that the plain language of Section 8550, when read in conjunction with the definition of "employee" in Section 8501 of the PSTCA, shows that for acts of "wilful misconduct" the legislature meant to abrogate the longstanding common law doctrine of absolute privilege for high public officials.[1] We disagree.

1. Appellant offers this Court no Pennsylvania case authority supporting his position. Instead, Appellant relies solely on the federal district court opinion in *Weinstein v. Bullick,* 827 F.Supp. 1193 (E.D.Pa.1993). However, Pennsylvania courts are not bound by the decisions of the lower federal courts construing Pennsylvania law. *See Rader v. Penn-*

■ If this Court were to adopt Appellant's argument, an irrational disparity would be produced in the immunities for Commonwealth and local agency employees. For example, high public officials who happen to receive their salary from the Commonwealth—such as the Governor—would be permitted to raise the defense of absolute immunity whereas high public officials who happen to receive their salary from a municipality—such as a Mayor—would not be permitted to raise the defense. Such an interpretation of Section 8550 of the PSTCA would produce an "absurd or unreasonable result," which, under the rules of statutory construction, we must presume that the legislature did not intend. *See Goodman v. Kennedy*, 459 Pa. 313, 326–27, 329 A.2d 224, 231 (1974) (rejecting appellant's interpretation of a Pennsylvania criminal statute because it would lead to an "absurd or unreasonable result" which the legislature did not intend). We are therefore unable to accept Appellant's argument.

This Court has never called into question, much less overruled, the common law doctrine of absolute privilege for high public officials. Moreover, our lower courts have consistently relied upon the doctrine. *See, e.g., Mosley v. Observer Publishing Company*, 422 Pa.Super. 255, 261, 619 A.2d 343, 346 (1993) (quoting *Matson* ), *appeal denied,* 535 Pa. 622, 629 A.2d 1382 (1993); *Yakowicz v. McDermott,* 120 Pa.Cmwlth. 479, 484, 548 A.2d 1330, 1332 (1988) (same), *appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989); *Rok v. Flaherty,* 106 Pa.Cmwlth. 570, 572, 527 A.2d 211, 212 (1987) (same), *appeal denied,* 517 Pa. 628, 538 A.2d 880 (1988); *DeSantis v. Swigart,* 296 Pa.Super. 283, 286–87, 442 A.2d 770, 772 (1982) (same); *Barto v. Felix,* 250 Pa.Super. 262, 267, 378 A.2d 927, 929 (1977) (citing *Matson* and *Montgomery* ); *McCormick v. Specter,* 220 Pa.Super. 19, 21, 275 A.2d 688, 689 (1971) (quoting *Matson* ).

Furthermore, our courts have agreed that Section 8550 of the PSTCA does not abrogate the common law doctrine of

sylvania Turnpike Commission, 407 Pa. 609, 615, 182 A.2d 199, 202 (1962); see also Lilley v. Johns–Manville Corp., 408 Pa.Super. 83, 97, 596 A.2d 203, 210 (1991) (citing Rader ), appeal denied, 530 Pa. 644, 607 A.2d 254 (1992).

absolute privilege for high public officials. *See Suppan v. Kratzer*, 660 A.2d 226 (Pa.Cmwlth.1995); *Petula v. Mellody*, 158 Pa.Cmwlth. 212, 220, 631 A.2d 762, 766 (1993); *Factor v. Goode*, 149 Pa.Cmwlth. 81, 87, 612 A.2d 591, 594 (1992), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993). These courts have limited their application of Section 8550 of the PSTCA only to render an employee of a local government agency subject to civil suit for wilful misconduct, where that employee did not qualify as a "high public official" for purposes of the common law doctrine of absolute privilege.[2]

In the leading case of *Factor v. Goode*, 149 Pa.Cmwlth. 81, 612 A.2d 591 (1992), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993), a defamation suit was brought by two property owners against the Mayor of the City of Philadelphia and the Revenue Commissioner of the City of Philadelphia. In *Factor*, the Mayor and Revenue Commissioner held a press conference wherein they identified the twenty property owners with the highest delinquent real estate taxes, including the plaintiffs, and described them as "deadbeats" and "tax cheats" who think that "they're above the law." *Factor*, 149 Pa.Cmwlth. at 84, 612 A.2d at 592. The issue before the Commonwealth Court in *Factor* was whether the Mayor and Revenue Commissioner were entitled to absolute immunity for making allegedly defamatory remarks against the plaintiffs.

Explaining that the Mayor and the Revenue Commissioner were undeniably "high public officials," the Commonwealth Court in *Factor* held that these two officials were immune from a defamation action because Section 8550 of the PSTCA did not abrogate the absolute privilege afforded high public

**2.** *See, e.g., Lancie v. Giles*, 132 Pa.Cmwlth. 255, 572 A.2d 827 (1990) (holding that police officer is a local agency employee and subject to civil suit under Section 8550 of the PSTCA); *Keeler v. Everett Area School Dist.*, 111 Pa.Cmwlth. 297, 533 A.2d 836 (1987) (holding that high school principal was a local agency employee but was nonetheless immune from civil suit because his actions did not constitute wilful misconduct); *Acker v. Spangler*, 92 Pa.Cmwlth. 616, 500 A.2d 206 (1985) (holding that school district employee was a local agency employee subject to civil suit under Section 8550 of the PSTCA); *Morris v. Musser*, 84 Pa.Cmwlth. 170, 478 A.2d 937 (1984) (holding that police officer was a local agency employee subject to civil suit under Section 8550 of the PSTCA).

officials. The *Factor* court explained that its review of those cases discussing Section 8550 of the PSTCA "reveal[ed] no instance in which it [was] applied to defeat the absolute privilege of a high public official, as Appellants suggest." *Factor*, 149 Pa.Cmwlth. at 87, 612 A.2d at 594. The *Factor* court concluded that Section 8550 of the PSTCA has "no bearing on the common law absolute privilege regarding high public officials, but rather addresses only those employees of local agencies who do not fall within the category of a high public official." *Id.*

The Commonwealth Court's holding in *Factor* has been adopted in two subsequent Commonwealth Court decisions, *Suppan v. Kratzer*, 660 A.2d 226 (Pa.Cmwlth.1995) and *Petula v. Mellody*, 158 Pa.Cmwlth. 212, 631 A.2d 762 (1993). In *Petula*, a former school administrator brought a defamation action against three school superintendents and their respective school districts. Relying on *Factor*, the Commonwealth Court in *Petula* granted all three school superintendents immunity as high public officials, finding that the "abrogation of immunity defenses provided for in Section 8550 of the [PSTCA] is applied only in those cases regarding employees of local agencies and has no bearing on the common law absolute privilege regarding high public officials." *Petula*, 158 Pa. Cmwlth. at 220, 631 A.2d at 766 (citing *Factor* ).

*Suppan* involved an applicant for a borough police job who brought a defamation action against the Mayor of Northampton Borough, the Northampton Borough Council President, and the Borough of Northampton. Relying on *Factor*, the Commonwealth Court in *Suppan* ruled that, regardless of the language in Section 8550 of the PSTCA, a "mayor and a borough council president are high public officials entitled to the absolute privilege described in *Factor*." *Suppan*, 660 A.2d at 230.

Our cases on absolute privilege have sought to strike a balance between the public's interest in the unfettered and full discussion of public business among our government officials while recognizing the undeniable right of the individual to be protected in his or her reputation. In so doing, we have

"declared that the public interest does not demand that all public officials be entitled to absolute privilege, but only that 'high-ranking officers' be so protected." *Montgomery,* 392 Pa. at 185, 140 A.2d at 104 (quoting *Matson* ).

Since Section 8550 of the PSTCA does not abrogate the common law doctrine of absolute privilege afforded high public officials, the question becomes whether Appellee qualifies as a high public official such that he is immune from this defamation suit. The standard used to determine who qualifies as a "high public official" was set forth by this Court in *Montgomery. See, e.g., Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735, 739 (1979) (adopting *Montgomery* definition of high public official); *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968) (same).

In *Montgomery,* we explained that the "determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery,* 392 Pa. at 185, 140 A.2d at 105 (citing cases). This Court made clear in *Montgomery* that, absent statutory classification, the parameters establishing "high public official" status would be delineated by the judiciary on a case-by-case basis, rather than establishing a bright-line "of demarcation, if any there be, which separates offices which are protected by absolute privilege from those which are not." *Id.* Explaining that both of the city officials had policy-making functions and that the public interest demanded that public officials be encouraged to inform the community about the progress of public works paid for by the taxpayers, we concluded in *Montgomery* that the Deputy Commissioner of Public Property of Philadelphia and the Philadelphia City Architect were high public officials. *See id.*

Appellant argues, however, that in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978), this Court changed the criteria set forth in *Montgomery* for determining which public officials qualify as high public officials for purposes of

absolute privilege. *See* Appellant's Brief at 12. We find Appellant's assertion unpersuasive. *DuBree* did not involve the question of absolute privilege for high public officials and, as such, *DuBree* did not discuss any of our earlier cases on absolute privilege. In fact, we made clear in *DuBree* that the issue of whether the seven named members of the Pennsylvania Department of Transportation were high public officials for purposes of absolute privilege was not before the Court since the Commonwealth Court had disposed of the case below without deciding the status of the officials in question. *See DuBree*, 481 Pa. at 540 n. 4, 393 A.2d at 293 n. 4. Rather, *DuBree* articulated a standard to determine which officials qualified for official immunity where those officials were not considered high public officials entitled to absolute privilege under the common law. Thus, in *DuBree*, for those officials who were not high public officials entitled to absolute privilege, we held that immunity was not absolute but qualified and its availability depended on the circumstances of each case.

There is no more important local public official than a mayor. He exercises the entire executive power of the borough or municipality and works closely with the city council on a wide range of social and economic policy issues. Our courts have ruled that a wide range of public officials with no greater a policy-making function than that of the Mayor in this case, and less of a policy-making function in many instances, are high public officials. *See, e.g., Jonnet v. Bodick*, 431 Pa. 59, 244 A.2d 751 (1968) (Township supervisor was a high public official for purposes of absolute privilege); *Montgomery*, 392 Pa. 178, 140 A.2d 100 (1958) (Deputy Commissioner of Public Property and City Architect are high public officials); *Matson*, 371 Pa. 188, 88 A.2d 892 (1952) (Pennsylvania Attorney General is a high public official for purposes of absolute privilege); *Suppan v. Kratzer*, 660 A.2d 226 (Pa.Cmwlth.1995) (Mayor and Borough Council President were high public officials for purposes of absolute privilege); *Mosley* v. *Observer Publishing Co.*, 422 Pa.Super. 255, 619 A.2d 343 (1993) (County Attorney was high public official for purposes of absolute privilege), *appeal denied*, 535 Pa. 622, 629 A.2d 1382 (1993);

*Factor,* 149 Pa.Cmwlth. 81, 612 A.2d 591 (1992) (Mayor of Philadelphia and Revenue Commissioner of Philadelphia were both high public officials), *appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993); *Rok v. Flaherty,* 106 Pa.Cmwlth. 570, 527 A.2d 211 (1987) (City Comptroller was high public official for purposes of absolute privilege), *appeal denied,* 517 Pa. 628, 538 A.2d 880 (1988); *Freach v. Commonwealth,* 23 Pa.Cmwlth. 546, 354 A.2d 908 (1976) (Superintendent of the Parole Division of the Board of Probation and Parole, District Attorney and the Assistant District Attorney of Delaware County were high public officials for purposes of absolute privilege), *aff'd in part,* 471 Pa. 558, 370 A.2d 1163 (1977); *McCormick v. Specter,* 220 Pa.Super. 19, 275 A.2d 688 (1971) (District Attorney was high public official for purposes of absolute privilege).

As Mayor, Appellee routinely makes significant public policy decisions, and is accountable to the voting public. Exercising significant policy-making functions as the most important public official in the Borough of Yeadon, Appellee clearly qualifies as a "high public official" under the criteria established in *Montgomery.*

As explained above, this Court has made clear that the doctrine of absolute privilege for high public officials applies "provided that the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction." *Matson,* 371 Pa. at 194, 88 A.2d at 895; *see also, Montgomery,* 392 Pa. at 183, 140 A.2d at 102. Having determined that Appellee is a high public official, the remaining inquiry is whether his remarks were made in the course of his duties and scope of his authority as Mayor of the Borough of Yeadon.

Both the trial court and the Commonwealth Court in this case found that Appellee's statements to Appellant Lindner regarding Appellant's ability as Chair of the Yeadon Borough Council's Finance Committee were made in the scope of Appellee's authority as Mayor. Since the Mayor of the Borough of Yeadon has statutory authority over the Borough's fiscal affairs and is permitted by statute to attend any or all

regular and special meetings of the Borough Council, we agree that Appellee's remarks were made within the scope of his official duties as Mayor.

In this instance, Appellee was engaged in a discussion with members of the Yeadon Borough Council about the Borough's financial affairs, which is a matter within the course of his duties and the scope of his authority as Mayor. *See, e.g., Mosley v. Observer Publishing Co.,* 422 Pa.Super. 255, 261–62, 619 A.2d 343, 346–47 (1993) (holding that district attorney's defamatory remarks about plaintiff were closely related to his official duties and thus protected by the doctrine of absolute privilege); *McCormick v. Specter,* 220 Pa.Super. 19, 275 A.2d 688, 689 (1971) (holding that even though a district attorney's statements regarding an ongoing investigation by the city may have been excessive, they were nonetheless closely related to a matter pending within his office and thus within the scope of the privilege). Since Appellee's remarks were within the scope of his authority as Mayor of the Borough of Yeadon, he is immune from this slander and libel suit under the doctrine of absolute privilege afforded high public officials.

For the above reasons, we AFFIRM.

NIX, C.J., concurs in the result.

NEWMAN, J., did not participate in the consideration or decision of this case.