

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2006

# Heller v. Fulare

Precedential or Non-Precedential: Precedential

Docket No. 05-3687

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Heller v. Fulare" (2006). *2006 Decisions*. Paper 671.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/671

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3687

_____

RONALD C. HELLER; JOHN R. FLINN;
MATHEW W. LINDSEY;
OTTO G. BARTON, II; CHRIS WILLIAM BENDER
Appellees
v.

JERRY C. FULARE, a/k/a JEROME FULARE,
individually, and in his official capacity
as a Logan Township Supervisor,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 04-cv-00265J )
District Judge:   Honorable Kim R. Gibson

_____

Argued May 17, 2006
Before:  RENDELL, Van ANTWERPEN and WEIS, Circuit
Judges.
Filed July 6, 2006

_____

Stephen J. Poljak, Esquire (ARGUED)
Marshall, Dennehey, Warner, Coleman & Groggin
600 Grant Street
2900 U.S. Steel Tower
Pittsburgh,   PA   15219

1

Attorneys for Appellant

Stephen D. Wicks, Esquire (ARGUED)
109 Lakemont Park Boulevard
Altoona, PA 16602

Attorney for Appellees

OPINION

WEIS, Circuit Judge.

This appeal is from the District Court's denial of common law immunity to defendant, a township supervisor, for allegedly defamatory comments made during meetings of the township's board of supervisors. The statements were based on information defendant obtained in violation of the Board's chain of command policy, which was designed to discourage interference with the police department by individual supervisors. The District Court determined that by failing to abide by the Board's policy, defendant supervisor acted beyond his authority and thus forfeited his right to immunity from suit. We conclude that the supervisor is entitled to the absolute immunity granted to high public officials by Pennsylvania law. Accordingly, we will reverse and remand.

I.

Logan Township is a municipality in Pennsylvania designated as a second-class township and, as such, is governed by an elected board of supervisors. The defendant, Fulare, is a member of the Board and plaintiffs are members of the township police department. In 2002, the Board hired a new chief of police. Because he had not previously worked as a police officer in Pennsylvania, he had to pass a state certification examination. Two of the plaintiffs reported to the township's solicitor and manager that the new chief of police had engaged in

2

improprieties during the examination process.

During a regular, public meeting of the Board on September 8, 2004, Fulare stated that he had asked for an investigation of the township police department by the state attorney general. Fulare further stated that he wanted to learn of possible misconduct or criminal activity within the police department.

In a subsequent Board meeting on September 23, 2004, Fulare said that the individual who administered the certification examination to the chief suspected a conspiracy by officers of the police department against the new police chief with respect to his certification examination. Fulare commented that the "conspiracy theory hits the nail on the head."[1]

At a Board meeting on October 14, 2004, Fulare revealed that a deputy attorney general had told him that there are "numerous serious misconduct issues [with the police department] that the Board should address" and that it should "hire a good attorney and clean the place up." Moreover, Fulare commented that he found the "conspiracy theory pretty interesting."

Before these events occurred, the Board had adopted a "chain of command" policy with respect to communications between supervisors and the police department. In a memorandum of March 23, 2004 addressed to the township manager, the Board wrote that it would communicate its directives on police matters to the manager who would convey them to the police officers. In turn, the officers were to report their concerns to the chief who would pass them on to the manager who would then contact the Board. The memorandum from the Board stated that it would

---

[1] The allegations in the complaint and amended complaint do not elaborate on the type of conspiracy Fulare may have been alluding to. However, the accuracy of his statements does not affect the immunity analysis. For this purpose we accept the plaintiffs' allegation that the statements were false and injured the plaintiffs' reputations.

"not participate in violating the order of the chain of command, nor will they tolerate any deviation from the chain of command." The memo is consistent with the police manual that the Board adopted some years earlier.

Plaintiffs filed a complaint against Fulare in the District Court alleging federal constitutional violations of the Due Process Clause and retaliatory actions contrary to the First Amendment. In addition, an amended complaint included a count for defamation under state law.

Fulare moved for dismissal of the defamation count on the grounds of absolute immunity based on state law. The District Court recognized that, under Pennsylvania jurisprudence, a township supervisor is considered a "high public official" generally entitled to a common law immunity for alleged defamatory statements made during public governmental meetings. However, the court concluded that immunity was not available to Fulare in this case because his comments concerned matters "not delegated to him under the Township code and ordinances."

The court observed that the improprieties asserted in connection with the employment of the new police chief were attributable to an outside agency that had administered the test and, as such, were not properly related to township business and thus not within the scope of Fulare's authority. The District Court further concluded, however, that if the alleged improprieties were matters of township concern, Fulare's activities violated the township's "chain of command" policy and, therefore, his statements would have been outside the scope of his authority.

II.

Generally, a denial of a motion to dismiss, particularly when only one count of a complaint is affected, would not support appellate review in this Court. However, we have found jurisdiction where a motion to dismiss is based on denial of immunity under state law. See Kulwicki v. Dawson, 969 F.2d 1454, 1459 (3d Cir. 1992). As we cautioned in Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), this exception to the

4

general rule is limited to situations where the challenged state law immunity applies as a ban on a suit itself, rather than as a simple bar to liability. Id. at 1106.

Lindner v. Mollan, 677 A.2d 1194 (Pa. 1996), sets out the scope of immunity for public officials in Pennsylvania. In Lindner, the Supreme Court of Pennsylvania remarked, "absolute privilege is 'designed to protect the official from the suit itself, from the expense, publicity and danger of defending the good faith of his public actions before the jury.'" Id. at 1195 (quoting Montgomery v. City of Philadelphia, 140 A.2d 100, 103 (1958)). In light of this expansive definition of the scope and purpose of Pennsylvania's immunity for high public officials, we conclude that we have appellate jurisdiction.

III.

Pennsylvania's doctrine of absolute privilege for high public officials

"is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction."

Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952) (emphasis in original).[2] The privilege is not for the benefit of the official, but

<hr/>

[2] A number of opinions from the United States District Courts in Pennsylvania have expressed the view that the passage of the Pennsylvania Political Subdivision Tort Claim Act ("PSTCA"), 42 Pa. Cons. Stat. §§ 8541, et. seq., abrogated high public official immunity. See Weinstein v. Bullick, 827 F. Supp. 1193 (E.D. Pa.1993); Lynch v. Borough of Ambler, No. 94-cv-6401, 1996 WL 283643 (E.D. Pa. May 29, 1996); Murphy v. Orloff, No. 04-cv-3618, 2004 WL 2861891 (E.D. Pa. Dec. 13, 2004); Smyth v. Barnes, No. 94-cv-0930 1995 WL 576935 (M.D. Pa. Sept. 25, 1995). However, these district court cases misconstrued Pennsylvania's common law immunity. To the

to protect "'society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.'"  Lindner, 677 A.2d at 1196 (quoting Montgomery, 140 A.2d at 103).

In Hall v. Kiger, 795 A.2d 497 (Pa. Commw. Ct. 2002), the Pennsylvania Commonwealth Court considered two factors to be relevant to determining whether a high public official acted within the scope of his duties at the time of the allegedly defamatory statements:  (1) the formality of the forum in which the alleged defamation occurred; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages.  Id. at 501.

The common law immunity of high public officials has its limits, as the Superior Court of Pennsylvania made clear in McKibben v. Schmotzer, 700 A.2d 484 (Pa. Super. Ct. 1997).  There, the mayor of a borough was entitled to immunity for harsh and untrue statements she made in a press release explaining the discharge of the police chief.  However, the immunity did not extend to comments the mayor made subsequently as a private citizen following a hearing on the criminal complaint she had brought against the police chief.  The Superior Court emphasized that the mayor's press release was issued in her official capacity, but her statements after the hearing were made when she was "no more than a private citizen seeking to enforce her private criminal complaint."  Id. at 492 (emphasis in original).

In the McKibben opinion, the Pennsylvania Superior Court included a list of government officials considered to be high public officials.  Id. at 489-90.  As the District Court recognized

_____

extent that the doctrine is applied to those designated as "high public officials," it has indeed survived despite the statute's limitations as to other employees.  See Lindner, 677 A.2d 1194 (Pa. 1996); Factor v. Goode, 612 A.2d 591 (Pa. Commw. Ct. 1992) (common law immunity for high government officials survived the PSTCA).  Accordingly, the district court opinions, to the extent that they express doubt as to the continued vitality of Pennsylvania's common law high public official immunity, are not correct.

6

in the case before us, a township supervisor is entitled to that designation. See Jonnet v. Dodick, 244 A.2d 751, 753 (Pa. 1968). We may therefore proceed to determine if the other prerequisites for immunity have been satisfied.

As to authority over matters related to and involving the police department, Pennsylvania statutes provide that a township board of supervisors "shall provide for the organization and supervision . . . of the police officers . . .." 53 Pa. Cons. Stat. § 66902. In general, the Board is "charged with the general governance of the township and the execution of legislative, executive and administrative powers in order . . . to secure the health, safety and welfare of the citizens of the township." 53 Pa. Cons. Stat. § 65607(1).

There can be no doubt that the ultimate authority to oversee the police department rests with the Board given the responsibilities assigned to it by statute. The Commonwealth Court commented in Penuel v. Uwchlan Township Police Commission, 397 A.2d 865 (Pa. Commw. Ct. 1979), that "[t]ownship supervisors . . . are vested with broad authority . . . with respect to the employment, compensation and termination of township police officers . . .." Id. at 867. The court went on to say, "where the Township supervisors exercise that authority, they are, of course, bound by their own rules." Id.[3]

It is undisputed that Fulare's alleged defamatory remarks occurred during formal public meetings of the Board. These statements are the foundation of the defamation claim before us. Plaintiffs contend that "triggering events" for Fulare's statements occurred when he personally discussed the certification improprieties with one of the township police officers and when he contacted the attorney general's office. Plaintiffs assert that these actions violated the township's written

---

[3] In the Penuel case, the chief of police discharged an officer without following the procedures set out in a resolution previously adopted by the board of supervisors. Because of that failure, the Commonwealth Court directed the board of supervisors to reinstate the officer.

7

policy that the Board would broach such matters first to the township manager who would then follow up on the matter.

Even if we assume that the defendant's conduct violated the Board's policy, that chain of command breach would not constitute defamation, nor is that conduct relevant to the defamation claim. It is immaterial that Fulare's source of information for the allegedly defamatory statements was derived from activity arguably in contravention of the chain of command. Instead, it is the content and context of the statements that must be the focus of the immunity analysis. Plaintiffs are attempting to stretch their complaint beyond the claims for defamation by invoking the "chain of command" policy.

In Lindner, the Pennsylvania Supreme Court repeated its language from Matson, that absolute immunity protects an official "even from statements . . . motivated by malice, provided the statements are made . . . within the scope of his authority. . . . " Lindner, 677 A.2d at 1195 (quoting Matson, 88 A.2d at 895).

An example of privileged speech that could be considered malicious or a personal attack occurred in Linder, where the mayor said, "And I'll say it right to your face; you're the village idiot . . . You've been dipping into the till. I know for a fact. And you know I know." Lindner, 677 A.2d at 1194.

Similarly, in Factor v. Goode, 612 A.2d 591, 592 (Pa. Commw. Ct. 1992), the mayor was immune from a defamation claim for statements describing plaintiffs as "deadbeats" and "tax cheats" who "think they're above the law." Another example occurred in Appel v. Township of Warwick, 828 A.2d 469 (Pa. Commw. Ct. 2003), where a township supervisor accused a citizen of being "an admitted thief." Id. at 471.

In Osiris Enterprises v. Borough of Whitehall, 877 A.2d 560 (Pa. Commw. Ct. 2005), the borough council adopted a motion declaring that a contractor was not a responsible bidder. Recognizing the very real harm that could occur to a contractor from such a designation, the Commonwealth Court nevertheless applied immunity. The court said, "where an official is entitled to absolute privilege, any personal or political motives are

8

immaterial, as is the presence of malice or want of reasonable and probable cause or the fact that the innocent may suffer irreparable harm." Id. at 566.

Similarly, in Hall, after a citizen requested that the council investigate the chief of police's possible criminal record, the court did not consider whether personal motives or animus affected a borough councilman's public response that the citizen physically abused his family.

It follows that because Pennsylvania courts have repeatedly applied immunity to false statements as well as malicious ones, the fact that Fulare may have obtained his information in violation of a Board policy, does not remove the shield of immunity.

Moreover, Fulare's statements were made during formal meetings and were within the ambit of the Board's oversight of the police department. These matters were statutorily entrusted to the Board, and therefore the statements were within Fulare's jurisdiction as one of the township supervisors.

We conclude that defendant Fulare met all of the prerequisites for the absolute privilege of a high public official under Pennsylvania law. Accordingly, the District Court erred in denying immunity. We will therefore reverse the order of July 19, 2005 as to the defamation count and remand the case to the District Court for resolution of the remaining issues.