## Sylvan Heights Realty Partners L.L.C. v. Lagrotta

C.P. of Lawrence County, no. 10844 of 2005, C.A.

*Jeffrey T. Morris* and *Marc A. Brooks,* for plaintiffs.
*Reizdan B. Moore, Susan Germanio, Jeff Foreman,* and *Tara Smith,* for defendant.

WHERRY, *S.J.,* February 16, 2007—This opinion is issued in response to defendant's, Frank Lagrotta, motion for judgment on the pleadings regarding the above-captioned case. The court finds the relevant facts as follows: During the period relevant to the complaint, the defendant was a member of the Pennsylvania House of Representatives and represented the Tenth House District of Pennsylvania in the Pennsylvania General Assembly. (Amended complaint at ¶3.) Plaintiffs allege that certain phone conversations and other such contact made by defendant constitutes tortious interference with a contract. Specifically, plaintiffs stated in their amended complaint:

"On or about July 30, 2003, defendant Lagrotta, acting outside the scope of his jurisdiction and his duties as a state legislator, discussed Sylvan's attempted purchase of Hill View with Susan Papa, an attorney in private [sic] in Lawrence County and the sister Mary Ann Reiter, the Lawrence County Controller." (Amended complaint at ¶30.)

"[A]ccording to two press releases from defendant Lagrotta's office, headlined 'Hill View Manor Sale Put on hold by PA Health Department' and 'Lagrotta: Sylvan Heights Lawsuit Filed Against Wrong Party,' (the 'press releases') on or about July 30, 2003, Lagrotta contacted the Pennsylvania Department of Health and complained of alleged 'apparently improper associations between the principals of Sylvan Heights and those of Americare

. . .' and 'questionable transfers of funds'. . . ." (Amended complaint at ¶32.)

" [I]n August 2003, Lagrotta, acting outside the scope of his jurisdiction and duties as a state legislator, requested that Pennsylvania State Police Commissioner Jeffery B. Miller investigate Sylvan's purchase of Hill View and claimed, based on 'hearsay' information allegedly related to him by unidentified third parties, that the principal individuals involved with Sylvan and Americare, along with the Lawrence County Commission Chair Roger DeCarbo and District Attorney Matt Mangino allegedly were involved in organized crime activities and should be investigated." (Amended complaint at ¶35.)

Pennsylvania courts have established the standard for reviewing a party's motion for judgment on the pleadings, specifically:

"Like all summary judgments entered without a trial, judgment on the pleadings may be entered only in clear cases free from doubt where there are no issues of fact, and only where the cause is so clear that a trial would clearly be a fruitless exercise . . . . The party moving for the judgment on the pleadings admits for the purpose of his motion, the truth of all the allegations of his adversary and the untruth of any of his allegations which may have been denied by his adversary. Goodrich-Amram 2d, §1034(b)(1)." *Beck v. Minestrella,* 264 Pa. Super. 609, 611, 401 A.2d 762, 763 (1979).

Furthermore, "judgment on the pleadings is only proper where the pleadings establish evidence that there are no material facts in dispute, such that a trial by jury would be unnecessary." *Teamann v. Zafris,* 811 A.2d 52,

63 (Pa. Commw. 2002), *overruled on other grounds by McCreesh v. City of Philadelphia,* 585 Pa. 211, 888 A.2d 664 (2005); see *Travelers Casualty & Surety Company v. Castegnaro,* 565 Pa. 246, 772 A.2d 456 (2001).

Defendant contends that the doctrine of legislative immunity serves to bar the instant suit against him. In analyzing the issue of whether particular actions by a public servant fall under the scope of immunity, the United States Supreme Court has offered the following guidance:

"The immunities of the Speech or Debate Clause were not written into the Constitution simply for the personal or private benefit of members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster,* 408 U.S. 501, 507, 92 S.Ct. 2531, 2535 (1972).

"In no case has this court ever treated the clause as protecting all conduct *relating* to the legislative process. In every case thus far before this court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process—the *due* functioning of the process." *Id.,* 408 U.S. at 515-16, 92 S.Ct. at 2539.

"We would not think it sound or wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process. Given such a sweeping reading, we have no doubt that there are few activities in which a legislator

engages that he would be unable somehow to 'relate' to the legislative process. Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make members of Congress supercitizens, immune from criminal responsibility. In its narrowest scope, the clause is a very large, albeit essential, grant of privilege. It has enabled reckless men to slander and even destroy others with impunity, but that was the conscious choice of the framers." *Id.,* 408 U.S. at 516, 92 S.Ct. at 2539.

"It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts. So expressed, the privilege is broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its members." *Id.,* 408 U.S. at 525, 92 S.Ct. at 2544.

In determining the standard for whether a public official is entitled to absolute privilege regarding their actions, Pennsylvania Supreme Court has stated:

"The 'determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions.' *Montgomery v. City of Philadelphia,* 392 Pa. 178, 185, 140 A.2d 100, 105 (1958) (citing cases) . . . [A]bsent statutory classification, the parameters establishing 'high public official' status would be delineated

by the judiciary on a case-by-case basis, rather than establishing a bright-line 'of demarcation, if any there be, which separates offices which are protected by absolute privilege from those which are not.' *Id.*" *Lindner v. Mollan,* 544 Pa. 487, 495, 677 A.2d 1194, 1198 (1996).

"[T]his court has made clear that the doctrine of absolute privilege for high public officials applies 'provided that the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.' *Matson v. Margiotti,* 371 Pa. 188, 194, 88 A.2d 892 895 (1952); see also, *Montgomery,* 392 Pa. at 183, 140 A.2d at 102." *Lindner,* 544 Pa. at 497, 677 A.2d at 1199.

Defendant contends certain telephone calls made by legislators are within the scope of "legitimate legislative activity". Defendant further avers that the holding in *Uniontown Newspapers Inc. v. Roberts* is controlling in the instant case and provides that defendant's actions fall under the sphere of legislative immunity; specifically:

"Included within the legislative process is drafting legislation and debating bills on the floor of the House. However, we believe that the 'sphere of legislative activity' extends much farther than merely the debating and drafting of laws. It is not uncommon for legislators to spend a majority of time speaking with other lawmakers and constituents, which includes telephone conversations, regarding proposed legislation or other matters of concern. As the *Eastland* court concluded that there needs to be protection of 'the integrity of the legislative process,' discussions with other lawmakers and constituents

is surely included within the ambit of 'legislative process.' Therefore, we hold that business telephone calls made by members of the General Assembly fall within the meaning of 'legitimate legislative activity.' Consequently, the act of Rep. Roberts denying access to his business telephone records is likewise within the sphere of legislative activity." *Uniontown Newspapers Inc. v. Roberts,* 777 A.2d 1225, 1233 (Pa. Commw. 2001), *reversed by Uniontown Newspapers Inc. v. Roberts,* 576 Pa. 231, 247, 839 A.2d 185, 194-95 (2003).

While the above holding does suggest that defendant's actions in placing telephone calls and issuing media releases qualifies for immunity, the court notes that the Pennsylvania Supreme Court overruled the Commonwealth Court in *Uniontown Newspapers Inc.* case as follows:

"Appellants contend the Commonwealth Court erred in concluding 'denying access to [appellee's] business telephone records is likewise within the sphere of legislative activity' under the immunity of the speech or debate section. The Commonwealth Court surmised appellee's telephone calls were within the ambit of 'legislative process'; consequently, denying access or offering access of the records 'albeit with a restriction' was also within the sphere of legislative immunity. However, whether appellee enjoys immunity from a civil action based on withholding records is not the issue raised by these counts. It is appellee's selective or conditional distribution of his telephone records, not his denial of access to them, which is the basis for appellants' claims." *Uniontown Newspapers Inc. v. Roberts,* 576 Pa. 231, 247, 839 A.2d 185, 194-95 (2003).

While the above language tends to indicate that the Supreme Court did not specifically rule on the issue of whether telephonic communications and press releases were properly under the scope of legislative immunity, the Supreme Court went on to state:

"The *United States Supreme Court has consistently held the transmission of information by members of Congress designed to inform the public is outside the protection of the clause.* See *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (Clause did not immunize United States Senator from liability for defamatory statements made in newsletters and press releases); see also, *United States v. Brewster,* 408 U.S. 501, 512, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) ('wide range of legitimate errands' performed for constituents, including news releases, are legitimate activities but political in nature, and therefore beyond scope of protection afforded by clause). Under the federal clause, individual discriminatory and retaliatory distribution of records by a legislator are not protected legislative activities, and the Speech or Debate Clause does not immunize them. *This analysis of the federal clause is persuasive in our interpretation of the state section.* Accordingly, the Commonwealth Court's order, to the extent it sustained preliminary objections against Counts II and III on the basis of Pennsylvania's Speech or Debate Section, is reversed." *Uniontown Newspapers Inc.,* 576 Pa. at 248, 839 A.2d at 195. (emphasis added)

This court finds plaintiffs' allegations are indistinguishable from a contention that the defendant made "transmission[s] of information . . . designed to inform the public." *Id.* Moreover, at this time the court has not been presented with any factual issues regarding the al-

leged communications.[1] Therefore, this court is constrained to find that the Pennsylvania Supreme Court's holding in *Uniontown Newspapers Inc.* is controlling on the issue of whether defendant's alleged actions initiating certain telephonic conversations and issuing media releases were within the scope of legislative immunity. Specifically, this court finds that *Uniontown Newspapers Inc.* held that such activities, while a legitimate part of a legislator's duties, are not protected under legislative immunity. See *id.* at 576 Pa. at 248, 839 A.2d at 195. Accordingly, defendant's motion for judgment on the pleadings must be denied.

## ORDER

And now, February 16, 2007, the court having reviewed the parties' respective briefs on defendant's motion for judgments on the pleadings, with Jeffery T. Morris, Esquire, appearing and representing the plaintiff, and Reizdan B. Moore, Esquire, appearing and representing the defendant, the court finds and it is hereby ordered, adjudged and decreed as follows:

(1) Defendant's motion for judgment on the pleadings is hereby denied as expressed in the attached opinion.

(2) The prothonotary shall serve notice of this order upon counsel of record for the parties, Jeffery T. Morris, Esquire and Reizdan B. Moore, Esquire; and if a party has no counsel, then upon said party at their last known address as contained in the court's file.

---

1. The court notes that while defendant has continued to assert that his alleged actions fall under the scope of legislative immunity, defendant, in the instant motion for judgment on the pleadings, has not contested the factual merit of plaintiffs' complaint.