**Maria BALLAS, et al.,**

v.

**CITY OF READING, et al.**

**No. CIV. A. 00–CV–2943.**

United States District Court,
E.D. Pennsylvania.

April 3, 2001.

Lloyd George Parry, Davis, Riter, Parry & Hartmann, Philadelphia, PA, Stephen V. Yarnell, Richard M. Squire & Associates, Narberth, PA, for Plaintiffs.

Steven K. Ludwig, Maren Reichert, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Defendants.

## MEMORANDUM

PADOVA, District Judge.

Before the Court is Defendants' Motion for Judgment on the Pleadings. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion.

## I. BACKGROUND

On September 27, 2000, Plaintiffs Maria Ballas and her husband Henry Lessig filed an Amended Complaint against various Defendants alleging wrongful and retaliatory termination and other violations of her due process rights under the Fourteenth Amendment to the United States Constitution. Maria Ballas ("Ballas") worked as a purchasing manager for the City of Reading, Pennsylvania ("City"), from 1974 to 1980, when she left for private employment, and again from 1987 until April 28, 2000, when she was terminated. Ballas alleges that she was terminated due to her and her husband's support of comprehensive trash collection in the City of Reading. The Amended Complaint stated eight counts for wrongful or retaliatory termination against the City; Joseph Eppihimer ("Eppihimer"), the City mayor; Jesus Pena ("Pena"), City human resources director; and the City Council of the City of Reading ("City Council"). In separate counts, Plaintiffs also sought relief from Defendant City of Reading Officers and Employees Pension Board and Barbara Adams, the pension administrator, for their alleged improper refusal to permit her to reinvest funds in the City

pension fund following her return to public employment in 1987. Henry Lessig ("Lessig") also asserts a claim for loss of consortium.

By Order dated January 25, 2001, the Court dismissed all claims relating to Defendants' refusal to allow Ballas to reinvest funds in the City's pension fund as well as several of the counts for wrongful termination. Specifically, the Court dismissed Counts I, III, and IV in their entirety; Count II as brought by Lessig; and Counts V through X against Eppihimer, the City, and the Council. Remaining in the case are Count II brought by Ballas pursuant to 42 U.S.C. § 1983 alleging retaliatory termination in violation of the First Amendment of the United States Constitution,[1] and Counts V through Count X alleging claims under state or local law[2] against Pena.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). Under Rule 12(c), the court cannot grant judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir.1994) (quoting *Society Hill Civic Assoc. v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980)).

---

1. The Amended Complaint fails to state against which Defendants Count II is brought. As stated in the Memorandum dated January 25, 2001, the Court presumes that Count II is against the City, Eppihimer, City Council, and Pena.

2. Counts V and VI allege that Ballas was wrongfully terminated in violation of section 603 and section 703 respectively of the Charter of the City of Reading ("City Charter"). Counts VII, VIII, and IX claim that Ballas' termination violated the City Charter and public policy. Lessig asserts a cause of action for loss of consortium in Count X.

## III. DISCUSSION

Defendants seek judgment on the pleadings in favor of the City Council on Count II and Pena on Counts V through X. First, Defendants argue that the City Council is entitled to judgment because the Amended Complaint lacks allegations of specific retaliatory conduct. Alternatively, Defendants assert that any alleged actions taken by the City Council with respect to Ballas were legislative in nature and covered by legislative immunity. Secondly, Defendants contend that Pena is immune from suit on any state law claims due to his status as a high public official. The Court will address each argument in turn.

### A. *City Council*

■ Count II alleges that Ballas was terminated from her position in retaliation for her and her husband's support for comprehensive trash collection in the City of Reading. Courts apply a three-step, burden-shifting analysis for retaliation claims made pursuant to the First Amendment under § 1983. *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir.1995). First, the plaintiff must show that the activity in question was protected. *Id.* Second, the plaintiff must show that the defendant responded with retaliation, and the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997); *Watters*, 55 F.3d at 892. Last, the defendant may defeat the plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct. *Watters*, 55 F.3d at 892. Defendants do not contest the protected nature of Plaintiffs' speech, but rather challenge the sufficien-

cy of the allegations of the Amended Complaint with respect to whether Plaintiffs' speech was a substantial or motivating factor in the alleged retaliatory termination.[3]

■ Upon reviewing the pleadings in the light most favorable to Ballas, the Court agrees that the Amended Complaint fails to allege that protected speech was a substantial or motivating factor behind any actions or omissions of the City Council. The Amended Complaint states the following allegations relevant to the retaliation claim with respect to the City Council. The City Council took office on January 1, 1996, following the establishment of a City Charter. (Am.Compl.¶¶ 20, 25.) The City Council decided not to establish comprehensive trash collection for the City. (*Id.* ¶ 32.) Lastly, the City Council failed to exercise its power to prevent Ballas' termination. (*Id.* ¶ 64.) Although Ballas claims that the City Council acted in "complete disregard" of the City Charter provisions governing employment, the Amended Complaint lacks allegations that the City Council's failure to act was motivated by any retaliatory intent based on Ballas' speech. (*See* Am. Compl. ¶ 51.) Accordingly, the Court grants Defendants' Motion with respect to Count II against the City Council, but also grants Plaintiffs leave to amend.

Defendants alternatively argue that the City Council's acts are entitled to legislative immunity from suit. Should Plaintiffs amend their complaint to properly state a claim against the City Council, Defendants will undoubtedly again raise this defense in a subsequent motion. To prevent the filing of a duplicative motion, the Court will address Defendants' alternative argument here.

---

**3.** For the purposes of addressing the instant Motion, the Court assumes without deciding that Plaintiffs' speech regarding comprehen-

sive trash collection was in fact protected by the First Amendment.

■ Similar to federal and state legislators, local legislators are absolutely immune from liability for their legislative activities. *Bogan v. Scott–Harris*, 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). To qualify as legislative, the act in question must be both substantively and procedurally legislative in nature. *In re Montgomery County*, 215 F.3d 367, 376 (3d Cir.2000). An act is substantively legislative where it involves "policy-making of a general purpose" or "line-drawing." *Id.* (quoting *Carver v. Foerster*, 102 F.3d 96, 100 (3d Cir.1996)). An act is procedurally legislative if it is undertaken "by means of established legislative procedures." *Id.* The City Council argues that the principle of legislative immunity should be expanded from immunity for individual legislators to protect the legislative entity as a whole, and that it should be immune from liability for any actions taken with respect to Ballas' termination.

■ Assuming without deciding that the doctrine of legislative immunity may be applied to a legislative body as opposed to individuals, the Court rejects the application of legislative immunity in this case. The Amended Complaint lacks allegations of any procedurally legislative action taken against Ballas. To the extent that an omission or failure to act may constitute a procedurally legislative action, the Amended Complaint also lacks allegations that the City Council has the legislative power to alter personnel decisions implemented or made by Eppihimer. Even had such allegations been included, the City Council's argument would nonetheless fail because employment actions taken with respect to specific employees do not constitute substantively legislative conduct. Unlike *Brogan* where the local legislature eliminated a position as part of a city-wide reduction in force, "[f]iring a particular employee is a personnel decision that does not involve general policy-making." *In re Montgomery County*, 215 F.3d at 376–77. Employment actions taken with respect to particular employees are executive or administrative in nature and not entitled to absolute immunity. *Id.* at 377.

### B. *High Public Official Immunity*

Counts V through IX allege tort claims under state and local law, and Count X alleges a claim for loss of consortium on behalf of Lessig against Pena. In its prior Memorandum dated January 25, 2001, the Court determined that Eppihimer was a high public official entitled to absolute immunity from suit on these claims based on a prediction that Pennsylvania courts would extend the doctrine of absolute privilege to claims other than for defamation. Pena now argues that he also is a high public official and entitled to absolute immunity. The Court rejects this argument.

An official's status as a high public official is determined on a case-by-case basis, and depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1198 (1996). In addition to mayors, courts have found a wide variety of positions to be high public officials including township supervisors, mayors, city architects, attorney generals, revenue commissioners, city comptrollers, and district attorneys. *See Lindner*, 677 A.2d at 1199 (listing cases). Pena argues that he is a high public official because his position, Director of Human Resources, is established by the City Charter, and because his duties involve supervising other human resources employees, and hiring, firing and administering the personnel system for elected officials and other employees.

Pena is not a high public official because his duties do not involve independent policymaking or discretionary authority, but are purely ministerial and administrative in nature. The City Charter provides for a department of human resources and requires the mayor to appoint a director of the department. Under the City Charter, the director of human resources:

> shall be responsible for administering the Department of Human Resources and administering the personnel system on the merit principles described in this Charter and promulgated by City Council as a part of the Personnel Code or otherwise. The Director of Human Resources shall coordinate and oversee the hiring, training, assignment, re-assignment, rotation, performance evaluation, and discharge of all employees.

(Am. Compl. Ex. A at 21–22.) Under this description, the Director of Human Resources administers a fairly detailed and specific personnel system that is established by City Council, and effectuates employee actions that are requested by the City Council or the mayor. (*See* Am. Compl. Ex. E.) There is no indication that apart from interpreting the terms of the personnel code, Pena is endowed with any discretionary authority. The personnel code is fairly detailed and deals mostly with mundane aspects of employment such as benefits, leave, and payroll administration. The only arguably discretionary duties of the director are to screen job candidates, participate in the selection process, and determine the appropriate disciplinary measures for employees reported by their supervisors. In performing these duties, however, the director applies specific criteria that are outlined in the personnel code to screen and evaluate job candidates and discipline employees. Furthermore, the director of the department for which the candidate is interviewing also participates in hiring and selection. Because the position of director of human resources does not have the independent and discretionary authority necessary to constitute a high public official, Pena is not entitled to absolute immunity against Counts V through X.

## IV. CONCLUSION

Defendants' Motion is granted in part and denied in part. Although the Amended Complaint fails to allege a claim for retaliatory discharge against the City Council, the Court will not grant judgement in favor of the City Council. Instead, the Court dismisses Count II against the City Council, and grants Plaintiffs' request for leave to amend. Defendants' Motion is denied with respect to Counts V through X.