**Lawrence Thomas HALL**

v.

**William KIGER, Jr., Appellant.**

**Lawrence Thomas Hall, Appellant,**

v.

**William Kiger, Jr.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2001.

Decided April 4, 2002.

Kenneth J. Nolan, Pittsburgh, for appellant, W. Kiger, Jr.

William L. Garvin, McKeesport, for appellee, L. Hall.

Before DOYLE, Senior Judge [1], COLINS, President Judge, and McGINLEY, J., SMITH–RIBNER, J., FRIEDMAN, J., and KELLEY, Senior Judge, and LEADBETTER, J.

OPINION BY Senior Judge DOYLE.

The present appeal and cross-appeal from the Common Pleas Court of Allegheny County arise from events which occurred at a Lincoln Borough (Allegheny County) Council meeting on August 15, 1995. During that meeting, William Kiger (Appellant and Cross–Appellee), a member of Lincoln Borough Council, presented a report that responded to claims that Lawrence Hall (Appellee and Cross–Appellant), a citizen of Lincoln Borough, made at a prior council meeting held sometime in 1994. At that council meeting, Hall had asserted that the Borough's Chief of Police had been charged with raping a young girl many years before. The record indicates that an incident at a more recent council meeting held in July 1995, may have reignited the issue Hall raised the previous year. At that 1995 meeting, Hall's attorney posed the question to the council regarding whether the Police Chief had ever been convicted of or pled guilty to a crime.

In response to Hall's allegations, Councilman Kiger initiated an investigation of those charges against the Police Chief. At the August 15, 1995, meeting, Councilman Kiger read aloud a prepared report concerning the Police Chief that Kiger and other borough representatives had drafted. That report informed those present at the meeting that Hall's claims regarding the Police Chief related to a paternity matter for which the Chief had accepted responsibility in 1958 when he was eighteen years old. However, after explaining that circumstance as the basis of Hall's allegations, Councilman Kiger went further and introduced information regarding Hall's alleged reputation for physical abuse. Councilman Kiger stated that, within the previous five years, Hall had been physically abusive to his wife and daughter-in-law, which had prompted family members to seek protection-from-abuse (PFA) orders.

Hall then filed a civil suit for defamation action against Councilman Kiger, and others, in the Common Pleas Court of Allegheny County.[2] The trial judge presiding

---

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle and Judge Kelley assumed the status of senior judge on January 1, 2002.

2. Hall filed two other civil defamation ac-

over the proceeding denied admission into the record for consideration by the jury of copies of the PFA petitions purportedly filed by Hall's wife and daughter-in-law. The trial court reasoned that those documents were inadmissible because they were not certified. In his defense of the defamation suit, Councilman Kiger introduced no evidence as to whether a judge had ever entered a PFA order. The jury ultimately concluded that the remarks Councilman Kiger made regarding Hall were false and defamatory, and awarded compensatory and punitive damages to Hall. Councilman Kiger filed post-trial motions seeking judgment notwithstanding the verdict (J.N.O.V.) and, alternatively, a new trial. The trial court denied those motions and affirmed the award of compensatory damages, but reversed the jury's award of punitive damages.

In this appeal, Councilman Kiger seeks reversal of the trial court's denial of his request for J.N.O.V. Alternatively, Councilman Kiger seeks a new trial. Hall, in his cross-appeal, seeks reinstatement of the jury's award of punitive damages.

■ This Court's standard of review from a trial court's order denying a litigant's motion for J.N.O.V. is limited to determining whether the trial court abused its discretion or erred as a matter of law. *Moore v. City of Philadelphia,* 131 Pa. Cmwlth. 586, 571 A.2d 518 (1990), *petition for allowance of appeal denied,* 527 Pa. 589, 588 A.2d 511 (1991). Additionally, we must view the record in the light most favorable to the verdict winner, giving him every reasonable inference. *Id.*

For the reasons that follow, this Court concludes that the trial court erred in not granting Councilman Kiger's post-trial motion seeking J.N.O.V.

Councilman Kiger first contends that his status as a borough councilman entitles him to raise the defense of absolute privilege with regard to his statements concerning Hall, even if they were false and defamatory.

The doctrine of absolute privilege for high public officials has been described as follows:

> [A]s its name implies, [the doctrine of absolute privilege] is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction . . . .*

*Matson v. Margiotti,* 371 Pa. 188, 193–94, 88 A.2d 892, 895 (1952).

■ The grant of an absolute privilege to public officials serves the practical function of protecting a high public official from the "expense, publicity, and danger of defending the good faith of his public actions before the jury[,]" while also serving the "deeper purpose" of protecting "society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such

tions against four additional defendants. In one of the two actions, Hall sued two Lincoln Borough secretaries, Sharon Matheys and Shelley Cornell. In the other suit, he sued two other Borough Councilmen, Ronald Rosche and Steve Kadar. Judge Eugene Strassburger issued an order consolidating all of Hall's defamation actions. Ultimately,

the actions against those other defendants were resolved by the trial judge who granted Motions for Compulsory Nonsuit with regard to the actions against Rosche and Kadar, and a directed verdict for the other two remaining defendants, Cornell and Matheys, which left Councilman Kiger as the sole defendant in the one remaining complaint.

business." *Montgomery v. City of Philadelphia*, 392 Pa. 178, 183, 140 A.2d 100, 103 (1958).

As noted by the Pennsylvania Superior Court in *McKibben v. Schmotzer*, 700 A.2d 484 (Pa.Super.1997), our courts, in applying the doctrine of absolute privilege, have sought to balance the societal interest of encouraging full and uninhibited participation by public officials in public business against the interest individuals have in protecting their reputation from false representations by public officials.

In seeking to accommodate these divergent interests, the courts have concluded that only high public officials should be entitled to claim absolute privilege as a defense. *Matson.* Accordingly, this court must first consider whether Councilman Kiger, in his capacity as a borough councilman, is a high public official. If we conclude that he is a high public official, we must then consider whether he made his statements regarding Hall in the course of his official duties. *Id.*

■ In *Montgomery*, our Supreme Court indicated the factors which courts should consider in determining whether an official is a high public official, and that they would include the nature of his duties, the importance of his office, and whether he has policy-making powers.

The duties and powers conferred upon borough council members under Sections 1005 and 1006 of The Borough Code,[3] 53 P.S. §§ 46005 and 46006, necessitate the exercise of both legislative and policy-making powers. These important aspects of the position of councilman quite easily fall within the characteristics set forth in *Montgomery*. Accordingly, Councilman Kiger's status is that of a high public official, which accords him the right to raise the defense of absolute privilege.

The next question this court must answer is whether Councilman Kiger acted within the scope of his authority or whether he exceeded his authority such as to make the claim of absolute privilege unavailable to him in his defense against Hall's defamation action.

The thorny issue in the present case rests on the fact that, although Councilman Kiger had the authority to report to the borough concerning the allegations against the Police Chief, a matter of strong public interest and concern,[4] his duty in that respect did not clearly necessitate his disclosure of personal information regarding Hall as the source of the allegations against the Chief of Police.

In *McCormick v. Specter*, 220 Pa.Super. 19, 275 A.2d 688 (1971), the Superior Court noted that our Supreme Court has never articulated a standard for determining when a high public official's acts are within the scope of his official duties. The court emphasized that it is the public's interest rather than the interest of the official that supports the establishment of an absolute privilege. The court stated that, "given the great potential for harm, the privilege must be limited to those statements and actions which are in fact 'closely related' to the performance of those official duties." *Id.* at 689. In *McCormick*, the plaintiffs had sued then District Attorney Arlen Specter for comments he made in public concerning a matter that was pending within his office—the ongoing investigation of the plaintiffs' business with the City of

---

**3.** Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

**4.** Whether a police chief is qualified is a pertinent subject to borough council, because that governmental body is responsible under Section 1121 of The Borough Code for the appointment of the police chief. 53 P.S. § 46121.

Philadelphia. The court concluded that Specter's statements were closely related to a matter pending within his office and thus within the scope of his duties.

In *Lindner v. Mollan,* 544 Pa. 487, 677 A.2d 1194 (1996), our Supreme Court concluded that defamatory comments a mayor had directed to a borough councilman at a council meeting were made within the scope of the mayor's authority. The subject for discussion at that meeting had been the borough's budget deficit. During that discussion the mayor accused the councilman of stealing from the borough. The court held that, because the mayor had been engaged in a discussion with members of the council concerning the borough's financial affairs—a matter within the scope of his authority as mayor—he was immune from suit. *Id.* Thus, even though the pertinent subject of discussion at that meeting was solely the budget issue, not the councilman, the court concluded that the mayor's act was closely related to his official duties. The court noted: "[i]n this instance, Appellee was engaged in a discussion with members of the ... Council about the Borough's financial affairs, which is a matter within the course of his duties and the scope of his authority as Mayor." *Id.* at 498, 677 A.2d at 1199.

In *Braig v. Field Communications,* 310 Pa.Super. 569, 456 A.2d 1366 (1983), Common Pleas Judge Joseph P. Braig appealed a grant of summary judgment in favor of a defendant who was an assistant district attorney in Philadelphia. Judge Braig had sued for defamation based upon comments the defendant had made on a television program. Judge Braig had presided over a trial involving one of two police officers who had been charged with police brutality, Bronzeill. The television show in question did not relate to the trial Judge Braig had conducted, but did involve the companion case against the other police officer, Bowe. During the course of the television discussion, the defendant made allegedly defamatory comments regarding his belief that Judge Braig had not been impartial in his handling of the Bronzeill case. Judge Braig had no other connection to the matter being discussed—the trial of Bowe.

The Superior Court reversed the trial court's grant of summary judgment to the defendant based upon the following rationale:

> [H]is remarks were not so closely related to his duties as Assistant District Attorney as to bring him within the scope of the district attorney's privilege. While he might have been invited to appear on the television show, the purpose was to discuss the Bowe case. This did not give him the right to say whatever he wanted to say on any other subject. His statement relating to Judge Braig and the *Bronzeill* case had nothing to do with the program itself nor with [the defendant's] duties as Assistant District Attorney.

*Id.* at 1374.

■ In reviewing the above case law, certain factors appear to have helped form the courts' conclusions: (1) the formality of the forum in which the words were spoken or published, and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance.

With these factors in mind, we conclude that Councilman Kiger's statements were closely related to his legitimate duties, because, as noted above, (1) he made the statements in the context of a public meeting while (2) performing his duty as councilman to report on a matter of great public concern that had been initiated by the subject of the defamatory comments.

In the *Lindner* case, the public official voiced his concerns at a formal meeting,

and although his statements did not relate directly to the subject of public concern, the budget, his defamatory statements did relate to a person who bore a relationship to the issue of the budget. Just as the councilman in *Lindner* was not the pertinent subject of discussion at the council meeting in that case, Hall was not the pertinent subject at the August 15 meeting of the Lincoln Borough Council; nevertheless, Hall was related to the subject of discussion because he initially raised the issue.

In *Braig,* the defendant district attorney uttered his defamatory comments in an informal forum, and the relationship of the legitimate subject of discussion to Judge Braig was remote, as that judge had no connection to the Bowe case.

If Councilman Kiger had initiated his discussion of the Police Chief, and then, without other prompting, had stated "citizen Doe who lives in Alaska is a wife-beater," a court could easily conclude that the statement bore no relation to the subject of the conduct of the Police Chief. A councilman under those circumstances could not claim privilege as a defense. Also, if Councilman Kiger had sought to engage in making such comments outside the arena of formal public discussion of the matter, he could not claim privilege as a defense. Under those circumstances such statements could not be said to be closely related to his duties as councilman.

The issue of public importance in the present case had as its *genesis* the statements of Hall, who became a direct participant in the matter. Hence, Councilman Kiger's statements were closely related to his duty to report on the allegations made by Hall against the Police Chief.

Accordingly, this Court concludes that, within the context of the specific facts of this case, Councilman Kiger's status as a high public official provides him with immunity because his defamatory statements were made in the course of discussion of a genuinely important municipal matter, at an official council meeting, and made in response to comments made by Lawrence Hall.[5]

Senior Judge KELLEY concurs in result only.

### ORDER

**NOW,** this 4th day of April 2002, the order of the Court of Common Pleas of Allegheny County is affirmed in part and reversed in part. The order is affirmed to the extent that it struck the jury's award of punitive damages. The order is reversed inasmuch as it denied Appellant William Kiger, Jr.'s motion for judgment notwithstanding the verdict. This case is remanded to the trial court for entry of an order consistent with this decision.

Jurisdiction relinquished.

---

**5.** Because our resolution of this issue is dispositive, we need not address the other issues raised by the parties.