Asghar Shahpari AZAR and K12 Systems, Inc., Appellants

v.

Frank J. FERRARI, Robert J. Keegan and Carbon Lehigh Intermediate Unit 21.

Commonwealth Court of Pennsylvania.

Argued April 3, 2006.

Decided May 3, 2006.

Kevin T. Fogerty, Allentown, for appellants.

Ellis H. Katz, New Britain, for appellees.

BEFORE: McGINLEY, Judge, and
LEADBETTER, Judge, and
McCLOSKEY, Senior Judge.

OPINION BY Senior Judge
McCLOSKEY.

Asghar Shahpari Azar and K12 Systems, Inc. (hereafter collectively referred to as Azar) appeal from an order of the Court of Common Pleas of Lehigh County (trial court), granting a motion for summary judgment filed on behalf of Frank J. Ferrari and Robert J. Keegan (hereafter collectively referred to as Defendants). We now affirm.

Azar originally began his employment with Carbon Lehigh Intermediate Unit 21 (IU 21) in July of 1981. During his employment, Azar was responsible for IU 21's computer/management information system (hereafter referred to as MIS). In fact, Azar performed substantial work in upgrading the system. In 2000, following the

retirement of IU 21's Executive Director, Dr. Jerry Stout, Defendant Ferrari was chosen to succeed Dr. Stout. Defendant Keegan was then appointed as Assistant Executive Director. According to Azar, he had a poor working relationship with Defendants. In January of 2002, Azar decided to retire from IU 21. By memo dated January 11, 2002, Azar informed Defendant Ferrari of his intention to retire effective March 15, 2002. As for his reasons for retirement, Azar cited to "personal concerns for [his] health." (R.R. at 454a).

Following his retirement, Azar formed K12 Systems, Inc., a management/information and computer support company which offered, among other things, educational computer software systems to school districts. Azar, through his new company, began contacting school districts and submitting proposals for these software systems. Several of these school districts participated in IU 21. Subsequent to this time, Azar alleges that Defendants, in the course of conversations with officials from these participating school districts, made negative statements concerning him and his business.

In fact, in a letter dated April 25, 2002, Azar specifically alleged that Defendants made "clearly slanderous statements" about him including "misleading and false statements about [his] work [IU 21] and about the state of [his] health." (R.R. at 56a). Azar requested that Defendants and any other IU 21 staff members "cease and desist immediately from bringing up [his] name to others . . . .," otherwise, he would seek legal remedies. *Id.* On September 9, 2003, Azar did indeed seek such legal remedies with the filing of a civil complaint with the trial court naming Mr. Ferrari, Mr. Keegan and IU 21 as defendants. In his complaint, Azar brought three counts

against Defendants, including tortious interference with prospective business relationships, defamation in the nature of business disparagement and defamation in the nature of his name and reputation.

More specifically, Azar alleged that Defendant Ferrari sent memos to other intermediate units and school districts stating that he had left IU 21 for health reasons and made comments during conversations with school district representatives regarding his poor health, all of which were allegedly untrue. Azar further alleged that Defendants made negative statements about him, criticized his management skills and even accused him of sabotaging IU 21's computer systems at two different meetings of the Management Information Systems Advisory Council (MISAC), which included technology coordinators, management staff and superintendents from participating IU 21 school districts. Azar indicated that following these meetings and conversations, several school districts and intermediate units which were interested in his services and to which he had submitted proposals refused to return his calls, put projects on hold and made no further contact.[1]

Defendants filed an answer essentially denying the allegations of Azar's complaint. Defendants included new matter in their answer alleging that the complaint failed to state a cause of action and that Azar's claims were barred by the appropriate statutes of limitations. Defendants further alleged that they were immune from suit under the doctrine of high public official immunity and/or official immunity under Section 8546 of the Judicial Code, 42 Pa.C.S. § 8546. All of the named defendants thereafter filed preliminary objec-

---

1. Azar attached numerous exhibits to his complaint, including letters to and from representatives of the various school districts and the proposals he submitted to these districts.

tions. By order of the trial court dated December 18, 2003, the preliminary objections of IU 21 were sustained and it was dismissed from the suit. However, the preliminary objections of Defendants Ferrari and Keegan were overruled. The case then proceeded with discovery.

Approximately one year later, in December of 2004, Defendants filed a motion for summary judgment and accompanying brief reiterating their belief that they are immune from suit under the doctrine of high public official immunity and/or official immunity under Section 8546 of the Judicial Code. Alternatively, Defendants alleged that Azar's claims must be dismissed as he failed to present prima facie evidence sufficient to support the elements of these claims. Azar filed an answer and accompanying brief in opposition to this motion contending that Defendants had not demonstrated that, as a matter of law, the doctrine of high public official immunity, an affirmative defense on which Defendants bear the burden of proof, applies to defeat his claims.

Azar also contended that any claims of governmental immunity should be rejected in light of Defendants' willful misconduct and the fact that their intent in making statements to others was a material issue of disputed fact. Further, Azar contended that he had presented evidence that at least two school districts were prepared to enter into contracts with him and his business prior to those districts receiving disruptive communications from Defendants and that the false and damaging statements allegedly made by Defendants preclude dismissal of his defamation and disparagement claims on summary judgment.

The case thereafter proceeded with oral argument before the trial court. By order dated August 25, 2005, the trial court granted Defendants' motion and entered judgment in favor of Defendants. In an accompanying opinion, the trial court held that Defendants were immune from suit under the doctrine of high public official immunity. In this regard, the trial court found that both of the Defendants were high public officials and that any remarks they made were in the course of their official duties and within the scope of their authority.

Alternatively, the trial court noted that even if Defendants were not entitled to immunity, it would still grant the motion for summary judgment based on a failure of proof. With respect to the tortious interference claim, the trial court noted that Azar failed to submit any evidence that the purported school districts or intermediate units had any intention of awarding a contract to him and his business. The trial court also noted the privilege on the part of Defendants to make statements in the course of their duties for IU 21.

With respect to the defamation and business disparagement claims, the trial court noted that Azar himself cited to health reasons as the basis for his retirement in his memo to Defendant Ferrari. The trial court also noted that, as to any statements made at the MISAC meetings, Azar produced no evidence that the statements were untrue to contradict the affidavits submitted by Defendants. Further, the trial court again cited to the privilege afforded to Defendants in their official capacities.

Azar filed a notice of appeal with the trial court as well as a statement of matters complained of on appeal. However, in his notice, Azar directed his appeal to our Superior Court. By order dated November 2, 2005, the Superior Court transferred the appeal to this Court.

 On appeal,[2] Azar argues that the trial court erred as a matter of law in granting Defendants' motion for summary judgment based upon the doctrine of high public official immunity particularly when Defendants admitted they had communications with certain school districts regarding Azar and his business. We disagree.

 Our Pennsylvania Supreme Court, in *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952), set forth the common law doctrine of absolute privilege for high public officials. In that case, the Court explained the doctrine of absolute privilege for high public officials as follows:

> as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Matson*, 371 Pa. at 194, 88 A.2d at 895.[3]

 Our Supreme Court later explained the purpose of absolute immunity as to foreclose the possibility of suit, stating as follows:

> Absolute immunity is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business. Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies.

*Montgomery v. City of Philadelphia*, 392 Pa. 178, 182, 140 A.2d 100, 102 (1958).

Recently, we noted that "where an official is entitled to absolute privilege, any personal or political motives are immaterial, as is the presence of malice or want of reasonable and probable cause or the fact that the innocent may sometimes suffer irreparable harm." *Osiris Enterprises v. Borough of Whitehall*, 877 A.2d 560, 566 (Pa.Cmwlth.2005), *petition for allowance of appeal denied*, —— Pa. ——, 897 A.2d 459 (2006).[4]

---

2. Our scope of review of an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). An abuse of discretion exists where the judgment exercised by the lower court is manifestly unreasonable. *Borough of Downingtown v. Wagner*, 702 A.2d 593 (Pa.Cmwlth.1997), *affirmed*, 553 Pa. 452, 719 A.2d 742 (1998). Moreover, summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Mountain Village v. Board of Supervisors of*

*Longswamp Township*, 582 Pa. 605, 874 A.2d 1 (2005); *Salerno*.

3. In *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996), our Supreme Court reconfirmed that this doctrine remains the law in Pennsylvania. Furthermore, the Court in *Lindner* noted that the cases on absolute privilege "have sought to strike a balance between the public's interest in the unfettered and full discussion of public business among our government officials while recognizing the undeniable right of the individual to be protected in his or her reputation." *Lindner*, 544 Pa. at 494, 677 A.2d at 1197.

4. In *Osiris Enterprises*, we further noted that Section 8550 of what is commonly referred to as the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8550, and which sets forth cir-

In this case, there is no question that Defendants are high public officials, as Azar does not dispute this fact.[5] Rather, Azar alleges that Defendants should not be entitled to assert the immunity defense as the alleged defamatory statements were made outside the scope of their official duties and authority. We have previously noted that our Supreme Court has never articulated a standard for determining when a high public official's acts or statements are within the scope of his official duties. *See Appel v. Township of Warwick*, 828 A.2d 469 (Pa.Cmwlth. 2003), *petition for allowance of appeal denied*, 576 Pa. 725, 841 A.2d 532 (2003); *Hall v. Kiger*, 795 A.2d 497 (Pa.Cmwlth. 2002), *petition for allowance of appeal denied*, 572 Pa. 713, 813 A.2d 846 (2002). Nevertheless, we have identified two factors that are relevant in reaching such a determination, including (1) the formality of the forum in which the alleged defamatory words were spoken and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance. *Id.*

In *Appel*, we affirmed the lower court's grant of summary judgment on the basis of high public official immunity where a township supervisor made alleged false and defamatory statements about an individual who wished to speak at a meeting of the township's board of supervisors.[6] Citing *Hall*, we further noted in *Appel* that "a high public official is immune from defamation suits even if the allegedly defamatory comments regarding the plaintiff are not pertinent to the topic of discussion, provided that the plaintiff had made a conscious decision to engage the official in a formal forum regarding a legitimate matter of public concern." *Appel*, 828 A.2d at 473.[7]

In *Hall*, we reversed an order of the lower court denying a motion for judgment notwithstanding the verdict filed on behalf of a local councilman. In that case, the local councilman initiated an investigation of the police chief upon complaints from the plaintiff. Following the investigation, during a public council meeting, the local councilman presented his findings regarding the police chief. However, the local councilman then went further to describe the plaintiff as physically abusive to his wife and daughter-in-law, both of whom had sought protection from abuse orders against plaintiff. Plaintiff thereafter brought a suit in defamation against the local councilman.

In concluding that the local councilman was entitled to high public official immunity from suit, we noted that the councilman's statements were closely related to his legitimate duties as the statements were made in the context of a public meeting while reporting on a matter that was

---

cumstances where official immunity can be waived, "does not abrogate the privilege of high public official immunity from suit." *Osiris Enterprises*, 877 A.2d at 566.

**5.** At oral argument, Azar conceded that Defendants are high public officials.

**6.** The township supervisor stated at this hearing that the individual who wished to speak was a thief of township property as well as property belonging to a private organization.

**7.** In this regard, we noted in *Appel* that at the time the statements were made, the township supervisor was acting in his capacity as a township official at a township meeting, where his duties included listening to the issues and concerns of local residents. Further, we noted that the individual wished to speak at the township meeting regarding a matter of public concern, namely, a street drainage problem, thereby making a conscious decision to engage the township official and other supervisors in their official roles.

first raised by plaintiff at an earlier council meeting as a matter of public concern. *Hall.*

Further, we have previously held that a school board director was immune from suit under the doctrine of high public official immunity where she published a letter to the editor of a local newspaper criticizing the school district's business manager and accusing him of misconduct and malfeasance relating to a $13,500,000.00 school renovation project. *Matta v. Burton,* 721 A.2d 1164 (Pa.Cmwlth.1998), *appeal dismissed,* 558 Pa. 612, 736 A.2d 606 (1999). In that case, we noted that the school board director had the authority to oversee school district contracts and that her criticism of the business manager's handling of the contract fell within the scope of her duties and authority.

█ In this case, Defendant Ferrari is IU 21's Executive Director. Defendant's powers and duties as Executive Director are statutorily prescribed. *See* Section 915–A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *added by* Act of May 4, 1970, P.L. 311, *as amended,* 24 P.S. § 9–965. Such powers and duties include administering IU 21's program of services, appointing professional and non-professional staff, preparing the budget, directing expenditures of funds, appointing advisory groups and providing the Superintendent of Public Instruction with information, reports and services. Defendant

Keegan had similar responsibilities in his position as Assistant Executive Director.

Azar alleged that Defendants made certain defamatory statements against him personally, as well as against his business. Nevertheless, contrary to Azar's argument, Defendants made these alleged defamatory statements within the scope of their official duties and authority. More specifically, Azar alleged that at two different MISAC meetings, Defendant Ferrari criticized his management of IU 21's MIS Department, which had offered educational programming and software assistance to member school districts. Azar also alleged that Defendant Ferrari sent letters to member school districts advising them of his departure for health reasons.[8] Further, Azar alleged that Defendant Ferrari made certain defamatory statements during the course of meeting with representatives of the member of school districts.

However, Azar never alleged that any of these activities, attending the MISAC meetings, sending letters to member school districts or meeting with representatives of the same, were outside the scope of Defendant Ferrari's duties. In an affidavit attached to the motion for summary judgment, Defendant Ferrari specifically indicated that his participation at the MISAC meetings, and any statements made therein, were part of his duties relating to the coordination of programs and services offered by IU 21.[9] Defendant Ferrari made similar statements regarding the let-

**8.** As noted above, in his January 11, 2002, retirement memo to Defendant Ferrari, Azar did indicate that he was retiring due to personal concerns for his health.

**9.** Azar alleges that the affidavit of Defendant Ferrari may not be used to establish the defense of high public official immunity, citing *Nanty–Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932). However, as the trial court correctly noted, the so-called *Nanty–Glo* rule only applies if there is a discrep-

ancy as to material facts. *See Kirby v. Kirby,* 455 Pa.Super. 96, 687 A.2d 385 (1997), *petition for allowance of appeal denied,* 548 Pa. 681, 699 A.2d 735 (1997). In this case, there is no factual discrepancy as to the issue of high public official immunity and, hence, the *Nanty–Glo* rule is inapplicable. We note that Azar raised an identical issue concerning an affidavit submitted by Defendant Keegan and addressed below.

ters and the meetings with representatives.

As to Defendant Keegan, Azar alleged that Defendant Keegan had also made certain alleged defamatory statements at a MISAC meeting, that Defendant Keegan had also met with representatives of member school districts and that Defendant Keegan had informed attendees at a meeting of the Pennsylvania Association of Intermediate Units in March or April of 2004 that he (Azar) was no longer representing IU 21. Again, however, Azar never alleged that any of these activities were outside the scope of Defendant Keegan's duties. Similar to Defendant Ferrari, Defendant Keegan submitted an affidavit describing these activities as within the scope of his duties.

Given the formality of the forums and the relationship of the subjects of concern to Defendants' official duties, we cannot say that the trial court erred as a matter of law in granting Defendants' motion for summary judgment based upon the doctrine of high public official immunity.

Accordingly, the order of the trial court is affirmed.[10]

### ORDER

AND NOW, this 3rd day of May, 2006, the order of the Court of Common Pleas of Lehigh County is hereby affirmed.

---

**10.** As we have reached this determination above, we need not address Azar's remaining arguments on appeal concerning his claims of tortious interference and business and personal disparagement.